IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
December 6, 2016 Session

**DAVID E. BREEZEE v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Benton County**
**No. 10-CR-45      C. Creed McGinley, Judge**

_____

**No. W2015-02251-CCA-R3-PC**

_____

The Petitioner, David E. Breezee, appeals the Benton County Circuit Court's denial of his petition for post-conviction relief from his convictions of rape of a child, rape, and two counts of incest and resulting effective thirty-four-year sentence. On appeal, he contends that he received the ineffective assistance of trial counsel, that the post-conviction court erred by denying his petition for a writ of error coram nobis, and that he is entitled to a second post-conviction evidentiary hearing due to post-conviction counsel's deficient performance. Based upon the oral arguments, the record, and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT L. HOLLOWAY, JR., JJ., joined.

Lance R. Chism, Memphis, Tennessee, for the appellant, David Eugene Breezee.

Herbert H. Slatery III, Attorney General and Reporter; Zachary T. Hinkle, Assistant Attorney General; Matthew F. Stowe, District Attorney General; and Bruce I. Griffey, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

In June 2010, the Benton County Grand Jury indicted the Petitioner for rape of a child, a Class A felony, in count one; rape, a Class B felony, in count three; and incest, a Class C felony, in counts two and four. The charges alleged two different victims, B.W. and D.W., who were the Petitioner's stepdaughters. The trial court severed the offenses in counts one and two involving D.W. from the offenses in counts three and four

involving B.W. The Petitioner was tried for counts three and four in April 2011 and counts one and two in August 2011.

At the first trial, B.W. testified that on February 24, 2010, the Petitioner "came into her bedroom, pinned her against the wall, and put his hand down her pants and that he 'play[ed]' with her vagina, 'sticking his fingers inside [her].'" State v. David Eugene Breezee, No. W2011-01231-CCA-R3-CD, 2012 WL 6728345, at *4 (Tenn. Crim. App. at Jackson, Dec. 28, 2012), perm. to appeal denied, (Tenn. May 14, 2013). D.W. and D.W.'s boyfriend testified that when D.W. opened the bedroom door, they saw B.W. pinned against the wall and the Petitioner's hand down her pants. Id. at *3-4. A jury convicted the Petitioner of rape and incest of B.W. as charged. After a sentencing hearing, the trial court merged the incest conviction into the rape conviction and sentenced the Petitioner to ten years in confinement. See id. at *1.

At the second trial, D.W. testified that one night in 2007, when she was twelve years old, she awoke with her shorts and undergarment on the floor and the Petitioner's tongue in her vagina. See State v. David Eugene Breezee, No. W2011-02186-CCA-R3-CD, 2012 WL 6717308, at *3 (Tenn. Crim. App. at Jackson, Dec. 26, 2012), perm. to appeal denied, (Tenn. May 14, 2013). She tried to push him away, but he held her so she could not move and told her to "shh." Id. The Petitioner stopped when her mother walked into the room. Id. On cross-examination, D.W. testified that the Petitioner would beat her every night while her mother was at work and that the beatings continued for three to four years. Id. at *4. The mother of the victims testified that she walked in on the Petitioner's performing oral sex on D.W. Id. at *3. A second jury convicted the Petitioner of rape of a child and incest as charged. Id. at *4. After a sentencing hearing, the trial court merged the incest conviction into the rape of a child conviction and sentenced him to twenty-five years in confinement. See id. The trial court ordered that the Petitioner serve the twenty-five-year sentence consecutively to the ten-year sentence for a total effective sentence of thirty-five years. See id.

The Petitioner appealed his convictions and sentences. This court affirmed his conviction and sentence for rape of a child in count one, reinstated his incest conviction in count two, and remanded the case to the trial court for resentencing as to both counts. Id. at *1. Two days later, this court affirmed his conviction and sentence for rape in count three, reinstated his incest conviction in count four, and remanded the case for resentencing on count four. See David Eugene Breezee, No. W2011-01231-CCA-R3-CD, 2012 WL 6728345, at *1.

On remand, the trial court sentenced the Petitioner to twenty-two years for rape of a child and five years for each incest conviction. State v. David Eugene Breezee, No. W2013-00798-CCA-R3-CD, 2013 WL 5745677, at *2 (Tenn. Crim. App. at Jackson,

- 2 -

Oct. 21, 2013), perm. to appeal denied, (Tenn. Mar. 4, 2014). The court ordered that the Petitioner serve the twenty-two-year sentence consecutively to the previously imposed ten-year sentence for rape and that he serve the two five-year sentences concurrently with each other and the other sentences for a total effective sentence of thirty-two years. Id. This court affirmed the Petitioner's sentences. Id. at *4.

On July 17, 2014, the Petitioner filed a pro se petition for post-conviction relief, alleging that he received the ineffective assistance of counsel because trial counsel failed to argue that the State did not prove beyond a reasonable doubt that the offenses were committed prior to the return of the indictment; failed to interview and call exculpatory witnesses, including his parents, to testify at trial; failed to object to and request a limiting instruction regarding testimony about prior bad acts; failed to object to the State's knowing use of perjured testimony; and failed to reveal to the jury that B.W. had received monetary consideration for her testimony against the Petitioner.[1] On September 3, 2014, the Petitioner filed a second pro se petition in which he alleged "newly discovered evidence" in the form of two letters that showed D.W. and her mother had a motive to fabricate sexual abuse allegations against him. The second petition also raised additional claims of ineffective assistance of counsel, including that trial counsel failed to call Ronnie Quillen to testify that he slept on the Petitioner's couch in February 2007 and that no sexual misconduct occurred, failed to object to testimony about "sexual abuse syndrome," and failed to request jury instructions on all lesser-included offenses.

The post-conviction court appointed counsel, and counsel filed an amended petition, maintaining that counsel was ineffective for failing to argue that the State did not prove the offenses were committed prior to the return of the indictment; failing to interview and call exculpatory witnesses, including the Petitioner's parents; failing to object to and request a limiting instruction on prior bad acts; failing to object to the State's knowing use of perjured testimony; and failing to reveal to the jury that B.W. was promised money from the Victim's Compensation Fund in exchange for her testimony. Post-conviction counsel also alleged that evidence unknown to exist at the time of the trials demonstrated a motive for D.W. and her mother to lie about the abuse.

The post-conviction court held an evidentiary hearing. At the outset of the hearing, the court stated that "we'll be proceeding on [the] 'Amended Petition' and [the] 'Answer' [to that petition filed by the State] concerning the grounds that have been alleged." Post-conviction counsel said nothing to the contrary and called Barbara Parker, the Petitioner's mother, as the Petitioner's first witness. Ms. Parker testified that after the Petitioner's trials, she paid off the title loan for D.W.'s father's truck. Ms. Parker was

---

[1] According to the petition, "Bribes from the Victim Compensation Fund was revealed by a State official and overheard by [the Petitioner's father]."

supposed to be repaid or take ownership of the truck, and the truck stayed parked in her yard for one year. At that point, she decided she had waited "long enough," "went through the belongings" in the truck, and found two letters. The first letter was from the victims' mother to D.W.'s father in which she said she loved him and wanted to be with him. Ms. Parker said that she did not remember seeing a date on the letter but that the victims' mother wrote the letter while still living with the Petitioner. Ms. Parker said that the second letter, which she assumed was from the State, stated that D.W. was paid from the "'Victim's Fund'" before the Petitioner's trials. The letter was dated.[2]

Ms. Parker testified that she did not think a proper investigation was conducted regarding the victims' allegations. She explained that the Petitioner "had a lot of out of town jobs" while he worked for Wade Dortch Roofing and that he was not home every night as D.W. had claimed at trial. He then went to work as an over-the-road truck driver for Warner Enterprises. She acknowledged, though, that she was at the Petitioner's home on the day of one of the alleged crimes and that the Petitioner was there.

On cross-examination by the State, Ms. Parker acknowledged that she did not know what happened in the home after she left that day. She also acknowledged that an investigation was conducted but said that it was "very very brief." Regarding the letter from the victims' mother to D.W.'s father, Ms. Parker acknowledged that it did not prove the Petitioner did not commit the crimes. She said that the "'Victim's Fund'" letter also did not prove his innocence but said that "you shouldn't get paid until you find out who the victim is." Ms. Parker gave the "'Victim's Fund'" letter to the Petitioner's trial counsel when she found it. She said that she did not remember exactly when she gave it to counsel but that it was sometime after the Petitioner's trials. Ms. Parker stated that she was present at the Petitioner's trials and that she would have testified for him if called. At that point, the post-conviction court asked if post-conviction counsel was alleging that Ms. Parker should have testified at the trials. Post-conviction counsel said no, and the court stated, "Let's kind of stick to our 'Amended Petition['] and the 'State's Response.'"[3] The State did not ask Ms. Parker any further questions.

John R. Breezee, Sr., the Petitioner's father, testified that he and Ms. Parker went to the assistant district public defender's office after the Petitioner's first or second trial and that counsel told them "right out that he didn't care one way or the other, because he was going to get paid any ways." Mr. Breezee stated that he repeatedly asked counsel why counsel did not do more for the Petitioner's defense and that counsel kept "throwing out a 412 Rule at me, or something like that." Mr. Breezee said that the Petitioner's trial

---

[2] According to the copy of the letter attached to the Petitioner's September 2014 pro se petition, the letter was dated August 27, 2010.

[3] This issue was raised in the Petitioner's amended petition.

- 4 -

was the prosecutor's first trial and that "[i]n my opinion, he was showboating for his parents." Mr. Breezee then described an incident that occurred during jury deliberations:

> I was standing out there on the bridge out there when the air conditioning was down where the jury couldn't go to the regular room. They crossed the [bridge] out there to [go] to a room over there, and the D.A. said, "Well, we need a guilty verdict here or nobody is going home tonight."

Mr. Breezee told trial counsel about the prosecutor's statement.

On cross-examination, the State asked if Mr. Breezee knew what the prosecutor was referring to, and Mr. Breezee answered, "The only thing I can make out of that was that he was wanting a guilty verdict." The State asked if the prosecutor could have been talking to some people from his office, and Mr. Breezee said, "No, because a couple of the jurors said, 'Oh, we've got to do something, because we need to go home tonight.'" Mr. Breezee said that the jurors were talking among themselves as they were walking across the bridge and that four or five other people also heard the prosecutor's statement.

Ronnie Quillen testified that he had been friends with the Petitioner for about twenty-five years and that he lived with the Petitioner and the victims' mother "on several different occasions" for six or eight years. He said he was not present when any of the alleged acts took place and was in Florida at the time of the Petitioner's trials. Mr. Quillen stated that the victims' mother was "always cheating" on the Petitioner, that she even told Mr. Quillen that she loved Mr. Quillen, and that the Petitioner "ain't never touched them kids." Post-conviction counsel asked if Mr. Quillen was living with the Petitioner on February 12, 2007, and he answered, "Let me think. If it was it was just right after that that I went to Florida." He said he never saw the Petitioner do anything to the victims.

The State did not present any proof. In a written order, the post-conviction court denied the petition for post-conviction relief. The court first noted that the Petitioner was represented at both trials by the district public defender and the assistant district public defender. The court then stated that it was skeptical of the testimony by the Petitioner's parents "due to the relationship and possible bias on behalf of the [P]etitioner." As to Ms. Parker's testimony about the two letters, the post-conviction court found that the letters were not available at either trial but stated that nothing indicated the letters would have had any impact on the trials. The court also stated that it did not think a victim's receiving payments as partial restitution for being a victim would have had any effect on showing bias in the victim's testimony. The court noted that it heard both of the victims testify at the trials and that "their testimony was incredibly persuasive and incriminating."

- 5 -

As to Mr. Breezee's testimony, the court found "absolutely no evidence of jury misconduct" and that, in any event, the proof at the trials was "overwhelming." As to Mr. Quillen's testimony, the court noted that Mr. Quillen was not present at the trials, that he was not present when the alleged acts occurred, and that he "just gave generalized testimony that he believed the [P]etitioner could not be guilty." The court found that defense counsel "ably represented" the Petitioner at trial and "did everything they could legitimately do on behalf of their client."

## II. Analysis

On appeal, the Petitioner contends that he received the ineffective assistance of counsel because trial counsel failed to challenge the validity of the verdict in the April 2011 trial based on Mr. Breezee's testimony that the jury was exposed to improper outside influence, failed to call Barbara Parker to testify at his August 2011 trial, and failed to call Ronnie Quillen to testify at both trials. The Petitioner also contends that the post-conviction court erred by denying his petition for a writ of error coram nobis and that he is entitled to a second post-conviction evidentiary hearing based on post-conviction counsel's deficient performance at the first hearing.

### A. Ineffective Assistance of Counsel

To be successful in a claim for post-conviction relief, a petitioner must prove the factual allegations contained in the post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields, 40 S.W.3d at 458. However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Generally,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697).

Turning to the instant case, the Petitioner notes that trial counsel did not testify at the post-conviction evidentiary hearing. He argues that he made an initial showing of the jury's exposure to improper outside influence during the April 2011 trial through his father's testimony at the hearing and, therefore, that the burden shifted to the State to explain the conduct or demonstrate it was harmless. He asserts that because the State failed to present trial counsel at the hearing, "he successfully established that the Prosecutor made an improper comment to the jury" and that his case was prejudiced by the improper comment. The State responds that the post-conviction court found Mr. Breezee's testimony about the prosecutor's comment to the jury not credible and that it was the Petitioner's responsibility to have defense counsel testify at the evidentiary hearing.

We are perplexed that the State failed to call trial counsel to testify. "We have observed on many occasions that original counsel, when available, should always testify in a post-conviction proceeding when there is an allegation that he was ineffective." State v. Hopson, 589 S.W.2d 952, 954 (Tenn. Crim. App. 1979). Moreover, "the state should present the attacked counsel to show what occurred." State v. Craven, 656 S.W.2d 872, 873 (Tenn. Crim. App. 1982); Garrett v. State, 530 S.W.2d 98, 99 (Tenn. Crim. App. 1975).

Nevertheless, even without trial counsel's testimony at the post-conviction evidentiary hearing to contradict the Petitioner's claim of outside influence, the Petitioner has failed to establish by clear and convincing evidence that he is entitled to relief. In the order denying the petition, the post-conviction court found "absolutely no evidence of jury misconduct." Moreover, the court found that the evidence against the Petitioner was overwhelming. Thus, the Petitioner did not establish deficient performance or prejudice. During oral arguments, post-conviction counsel asserted that the post-conviction court improperly found the Petitioner's father not credible based solely on the witness's familial relationship. We disagree. While the court stated that it was considering Mr. Breezee's testimony "with skepticism" due to his relationship with the Petitioner, the court did not make a blanket determination regarding his credibility. The court then found Mr. Breezee's testimony about the prosecutor's comment to the jury not credible. We note that although the Petitioner claims the prosecutor made the statement during the April 2011 trial, Mr. Breezee did not say when he heard the statement. We conclude that the Petitioner is not entitled to relief.

The Petitioner also claims that counsel was ineffective for failing to have Ms. Parker testify at his August 2011 trial that he was out of town often, which would have contradicted D.W.'s testimony that he was at home every night. The Petitioner acknowledges that the post-conviction court specifically asked post-conviction counsel during the evidentiary hearing if he was alleging that Ms. Parker should have testified and that counsel said no. Nevertheless, he requests that we consider the issue. The post-conviction court did not address the issue in its order denying relief, and we conclude that the issue has been waived. See Tenn. R. App. P. 36(a) (providing that "[n]othing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error). In any event, while Ms. Parker testified at the hearing that the Petitioner was gone often, she testified that he was home on the day of at least one of the incidents. Moreover, the post-conviction court concluded that the trial evidence was overwhelming. Therefore, the Petitioner is not entitled to relief. See Tenn. R. App. P. 36(b); State v. Adkisson, 899 S.W.2d 626, 639 (Tenn. Crim. App. 1994) (providing that in order to an error to be considered plain error, "consideration of the issue is necessary to do substantial justice").

Regarding Mr. Quillen, the Petitioner contends that trial counsel should have called Mr. Quillen to testify at both trials about the victims' mother's infidelity, which would have allowed counsel to argue that she was not credible and that she had a motive to lie against the Petitioner. However, the Petitioner did not raise this specific issue in his amended petition for post-conviction relief. He also did not raise it at the evidentiary hearing, and the post-conviction court did not address it in the order denying the petition. See Tenn. R. App. P. 36(a). Moreover, as noted by the State, the victims' mother

admitted at the Petitioner's first trial that she "'mess[ed] around'" with a registered sex offender in 2007 while the Petitioner was working away from home. See David Eugene Breezee, No. W2011-02186-CCA-R3-CD, 2012 WL 6717308, at *3. Thus, trial counsel and one jury were aware of her infidelity. That jury convicted the Petitioner anyway, and we conclude that he is not entitled to relief. See Tenn. R. App. P. 36(b).

## B. Error Coram Nobis

Next, the Petitioner claims that the post-conviction court erred by denying his petition for a writ of error coram nobis, seeking relief for the two letters found by his mother. He acknowledges that he did not file a separate document titled "petition for writ of error coram nobis" in this case but argues that the post-conviction court should have addressed the letters as a petition for writ of error coram nobis because they constituted "newly discovered evidence." We disagree with the Petitioner.

As noted by the Petitioner, this court addressed this very issue in Cyntoia Denise Brown v. State, No. M2013-00825-CCA-R3-PC, 2014 WL 5780718, at *1 (Tenn. Crim. App. Nov. 6, 2014), perm. to appeal denied, (Tenn. May 15, 2015). In that case, the petitioner's pro se petition for post-conviction relief contained a brief section titled "'NEWLY DISCOVERED EVIDENCE'" regarding her claim that fetal alcohol syndrome played a part in her actions on the night of the crime. Cyntoia Denise Brown, No. M2013-00825-CCA-R3-PC, 2014 WL 5780718, at *20. In her amended petition, she argued that counsel was ineffective for failing to investigate and present evidence of the disease. Id. As in the instant case, Brown's post-conviction counsel never mentioned "error coram nobis" prior to or at the post-conviction evidentiary hearing, the State did not respond to the issue as an error coram nobis claim, and the post-conviction court did not address the issue as an error coram nobis claim or state the coram nobis standard of review. Id. Thus, this court concluded that the issue for coram nobis relief was not raised in the court below, and we refused to treat the petition for post-conviction relief as one requesting relief under the writ of error coram nobis. Id. (citing Asata Lowe v. State, No. E2006-02028-CCA-MR3-PC, 2008 WL 631169, at *23 (Tenn. Crim. App. at Knoxville, Mar. 10, 2008), perm. to appeal denied, (Tenn. 2008)). We see no reason to rule any differently here. Moreover, while the Petitioner attached copies of the letters to his September 2014 pro se petition, he did not introduce the original letters into evidence at the post-conviction hearing. See Tenn. R. App. P. 36(a). Thus, he is not entitled to relief.

## D. Second Post-Conviction Evidentiary Hearing

Finally, the Petitioner contends that at the very least, he is entitled to a second post-conviction evidentiary hearing due to the deficient performance of his first post-

conviction counsel.[4] Specifically, he contends that a second hearing is warranted because post-conviction counsel failed to follow Tennessee Supreme Court Rule 28 section 6(C)(3), which requires that counsel file a certificate of counsel within thirty days of being appointed; failed to address the numerous claims raised in the pro se petitions and the amended petition at the post-conviction evidentiary hearing; failed to call trial counsel to testify at the hearing; and made no argument at the close of proof.

Initially, we note that "there is no constitutional entitlement to the effective assistance of counsel in a post-conviction proceeding." Frazier v. State, 303 S.W.3d 674, 680 (Tenn. 2010). Nevertheless, Tennessee Supreme Court Rule 28 section 6(C) provides as follows:

> (2) Appointed or retained counsel shall be required to review the pro se petition, file an amended petition asserting other claims which petitioner arguably has or a written notice that no amended petition will be filed, interview relevant witnesses, including petitioner and prior counsel, and diligently investigate and present all reasonable claims.

> (3) Appointed or retained counsel shall file the certificate of counsel set forth in the appendix within thirty (30) days of either being retained or appointed to represent petitioner, except for good cause shown.

However, our supreme court has stated that while Tennessee Supreme Court Rule 28 section 6(C)(2) and section 6(C)(3) "set forth a minimum standard of service to which post-conviction counsel is held," they "do not provide any basis for relief from a conviction or sentence." Id. at 681. Additionally, this court has repeatedly held that post-conviction counsel's Rule 28 violations do not warrant a second post-conviction hearing. See, e.g., Thaddeus Johnson v. State, No. W2014-00053-CCA-R3-PC, 2014 WL 7401989, at *9 (Tenn. Crim. App. at Jackson, Dec. 29, 2014), perm. to app. denied, (Tenn. May 18, 2015); Anthony Boyland v. State, No. W2013-01226-CCA-MR3-PC, 2014 WL 3818612, at *14 (Tenn. Crim. App. at Jackson, Aug. 4, 2014), perm. to appeal denied, (Tenn. Nov. 20, 2014); Jonathan Everett v. State, No. W2013-02033-CCA-R3-PC, 2014 WL 3744498, at *67 (Tenn. Crim. App. at Jackson, July 28, 2014), perm. to appeal denied, (Tenn. Nov. 19, 2014). In any event, post-conviction counsel filed an amended petition raising many of the issues in the pro se petitions and then filed a motion to declare the case "complex and/or extended." In that motion, counsel stated that he had

---

[4] Post-conviction counsel in the present appeal did not file the amended petition for post-conviction relief or represent the Petitioner at the post-conviction evidentiary hearing.

spent "a significant and lengthy" amount of time researching and reviewing the Petitioner's case file and that meetings and conferences with the Petitioner and his family had been "extensive and lengthy."  The State agreed, and the post-conviction court granted the motion.  A post-conviction evidentiary hearing was held, and counsel called the Petitioner's parents and Mr. Quillen to testify.  Although counsel did not address many of the Petitioner's claims at the hearing, "[a]ll that due process requires in the post-conviction setting is that the defendant have 'the <u>opportunity</u> to be heard at a meaningful time and in a meaningful manner." <u>Stokes v. State</u>, 146 S.W.3d 56, 61 (Tenn. 2004) (quoting <u>House v. State</u>, 911 S.W.2d 705, 711 (Tenn. 1995)).  Accordingly, we conclude that the Petitioner is not entitled to relief.

### III.  Conclusion

Based upon the oral arguments, the record, and the parties' briefs, we affirm the judgment of the post-conviction court.


_____
NORMA MCGEE OGLE, JUDGE